RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18b0007p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: MELINDIA GAIL JACKSON,

*Debtor.*

No. 17-8006

Appeal from the United States Bankruptcy Court
for the Western District of Michigan at Grand Rapids.
No. 13-07534—Scott W. Dales, Judge.

Decided and Filed: May 11, 2018

Before: DELK, HUMPHREY, and PRESTON Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEF:** Elizabeth M. Abood-Carroll, ORLANS PC, Troy, Michigan, for Appellee. Melindia Jackson, Wixom, Michigan, pro se.

_____

## OPINION

_____

PAULETTE J. DELK, Bankruptcy Appellate Panel Judge. The Panel *sua sponte* raises the question of whether this appeal was filed late for the purposes of 28 U.S.C. § 158(c)(2) and finds that it was. Following the Supreme Court's precedent in this area, including its recent decision in *Hamer v. Neighborhood Housing Services of Chicago*,[1] the Panel finds that the time requirements of 28 U.S.C. § 158(c)(2) are jurisdictional in nature and, therefore, the Panel is without jurisdiction to hear late appeals, including this one.

---

[1]138 S. Ct. 13 (2017).

**FACTS**

On September 25, 2013, Melindia Gail Jackson ("Jackson") filed a voluntary petition for relief under chapter 7. After a hearing in March 2014 the bankruptcy court granted U.S. Bank National Association's motion to lift the automatic stay on Jackson's residence. With the stay lifted, the bank proceeded with a foreclosure action in state court. Despite much opposition, the bank foreclosed on Jackson's residence on May 15, 2014 and Jackson's right to redeem the property expired six months later. On October 29, 2014, the Chapter 7 Trustee filed a no-asset report and on February 23, 2015, Jackson obtained a discharge of her debts.

The order on appeal before this panel is a result of a series of letters and requests submitted by Jackson to the bankruptcy court in December 2016. In these letters, Jackson: (1) notified the bankruptcy court that the account number for creditor Wells Fargo had changed [ECF No. 113]; (2) requested "reconsideration of House being exempt in the bankruptcy case" where she sought to unwind a foreclosure and reclaim her former residence [ECF No. 114]; (3) requested a "sign[ed] court Order stating that the amended Scheduled have been listed, dismissed and entered" [ECF No. 115]; and (4) requested "Reconsideration of transferring Bankruptcy Case" seeking reconsideration of a prior order which denied her request to transfer the bankruptcy case to the Eastern District of Michigan [ECF No. 116]. After a hearing, the bankruptcy court issued a Memorandum Decision and Order on January 26, 2017 [ECF No. 133]. Except for acknowledging Jackson's notice of a new account number for creditor Wells Fargo, that order denied all of Jackson's requests for relief included in the four letters. That order also directed the Clerk to "prepare and enter a final decree discharging the trustee and closing the case promptly but not earlier than twenty eight days after the entry" of that January 26, 2017 order. Jackson filed her Notice of Appeal of that order 28 days later on February 23, 2017. On February 24, 2017, the Clerk docketed a "Text Order of Final Decree"[2] which referenced the discharge of the Chapter 7 Trustee and closed the case pursuant to the bankruptcy court's January 26, 2017 order.

---

[2]The entry on the bankruptcy court docket states: "Text Order of Final Decree. The Estate of the Debtor(s) has been fully administered. The Chapter 7 Trustee is discharged as trustee of the estate and the bond is cancelled. Pursuant to Court Order signed 1/26/2017, DN 133, the Chapter 7 case is closed. This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached. (rrr) (Entered: 02/24/2017)." [ECF No. 139].

**JURISDICTION**

Before the Panel may proceed to the merits of the appeal, we must assure ourselves of our jurisdiction to hear this case. Section 158 of title 28 grants the Bankruptcy Appellate Panel jurisdiction to hear appeals of final orders of bankruptcy courts. For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[3] "A disposition is final if it contains 'a complete act of adjudication,' that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter."[4]

The bankruptcy court's order before the panel disposed of all of the matters raised by Jackson and left nothing for the court to do but administratively close the case. Specifically, with regard to Jackson's four requests, the order explains that the bankruptcy court (1) found no grounds warranting reconsideration of its refusal to transfer the bankruptcy case to the Eastern District of Michigan, where Jackson now resides; (2) found no basis for unwinding the foreclosure of Jackson's former residence and that it lacked jurisdiction over the matter due to an appeal pending in district court; (3) found that Jackson's ECF No. 113 accomplished Jackson's objective of giving interested parties notice of a new account number from Wells Fargo; and (4) acknowledged Jackson's right to amend her schedules to list omitted creditors as a matter of course at any time before the case is closed, provided Jackson also gives notice of the amendment to the affected entities.

The order further states that the "[c]ourt has considered the Debtor's other arguments and finds in them no grounds for relief. After reviewing the Debtor's recent filings, and having conducted a hearing on these issues, the court has determined to withhold all relief."

---

[3]*Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and quotation marks omitted).

[4]*Mullen v. Hamlin* (*In re Hamlin*), 465 B.R. 863, 868 (B.A.P. 9th Cir. 2012) (quoting *Brown v. Wilshire Credit Corp.* (*In re Brown*), 484 F.3d 1116, 1120 (9th Cir. 2007)).

The order goes on to provide as follows:

> NOW, THEREFORE, IT IS HEREBY ORDERED that except as provided above with respect to the Debtor's new account numbers, all requests for relief included within ECF Nos. 113, 114, 115 and 116 are DENIED.
>
> IT IS FURTHER ORDERED that the Clerk shall prepare and enter a final decree discharging the trustee and closing the case, promptly but not earlier than twenty eight days after entry of this Memorandum of Decision & Order.
>
> IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision & Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Debtor Melindia Gail Jackson, John M. Van Elk, Esq., Elizabeth M. Abood-Carroll, Esq., Thomas R. Tibble, chapter 7 Trustee, and the Office of the United States Trustee.

The above language supports a conclusion that the order is a complete act of adjudication, a full adjudication of the issues at bar, and clearly evidences the bankruptcy court's intention that it be the court's final act in the matter. Jackson filed her notice of appeal on February 23, 2017, 28 days after the final order.[5]

Section 158 of Title 28 confers jurisdiction to hear appeals from bankruptcy courts upon the district courts and bankruptcy appellate panels. Specifically, 28 U.S.C. § 158(c)(2) provides that: "[a]n appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules." Rule 8002(a)(1) provides that, notwithstanding exceptions not relevant presently, "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1). Because the Notice of Appeal was filed 28 days after the entry of the final order, it is late. The question this Panel must answer is this: what are the jurisdictional consequences of this missed deadline?

Over the past 14 years, the Supreme Court has written extensively on the jurisdictional consequences of statutory filing requirements; however, it has not yet considered the filing

---

[5]The "Text Order of Final Decree," which technically closed the case, was entered one day after the notice of appeal. The Text Order is "essentially an administrative task, a docket entry reflecting the conclusion of a case for record-keeping purposes." *McClelland v. Grubb & Ellis Consulting Servs. Co.* (*In re McClelland*), 377 B.R. 446, 453 (Bankr. S.D.N.Y. 2007) (citations omitted). The Text Order does not affect the finality of the January 26 order.

requirements imposed by 28 U.S.C. § 158(c)(2). The Court places these filing requirements into one of two broad bins: Jurisdictional filing requirements, which may be brought up at any time, and are not subject to waiver, forfeiture, or equitable tolling, and mandatory claims-processing rules, which are subject to those exceptions.

The Sixth Circuit Court of Appeals and the Sixth Circuit Bankruptcy Appellate Panel have long held that the 14 day time imposed by 28 U.SC. § 158(c)(2) with reference to Bankruptcy Rule 8002 is jurisdictional in nature.[6] Moreover, all ten circuit courts that have considered this question have found that compliance with § 158(c)(2) is a jurisdictional requirement.[7]

The circuits have been uniform in their jurisdictional treatment of § 158, but in *Reed Elsevier, Inc. v. Muchnick*, the Supreme Court held the statute at issue in that case was not jurisdictional, explaining that in prior cases "we relied on longstanding decisions of *this Court* typing the relevant prescriptions 'jurisdictional.' . . . *Amicus* cites well over 200 opinions that characterize § 411(a) as jurisdictional, but not one is from this Court . . . ."[8] Therefore, to be sure of our jurisdiction in this appeal, the Panel must decide if recent Supreme Court decisions, and *Hamer* in particular, require us to depart from the clear path outlined by the Sixth Circuit and others. We find that they do not.

---

[6] *See e.g. Martin v. First Nat'l Bank of Massillon* (*In re Martin*), 573 F.2d 958, 959 (6th Cir. 1978); *Schwab Indus., Inc. v. Huntington Nat'l Bank*, 679 F. App'x 397, 399 (6th Cir. 2017) ("Compliance with the [14-day] filing rule is a jurisdictional requirement.") (quoting *Crider v. Dobbs* (*In re Crider*), No. 98-2376, 205 F.3d 1339 (Table), 2000 WL 191823 at *3 (6th Cir. Feb. 10, 2000)).

[7] *Dorsey v. U.S. Dep't of Educ.* (*In re Dorsey*), 870 F.3d 359, 362 (5th Cir. 2017) (citing *Smith v. Gartley* (*In re Berman-Smith*), 737 F.3d 997, 1003 (5th Cir. 2013)); *Schwab Indus., Inc.*, 679 F. App'x 397 at 399; *Ozenne v. Chase Manhattan Bank* (*In re Ozenne*), 841 F.3d 810, 814 (9th Cir. 2016), *cert. denied sub nom. Ozenne v. Chase Manhattan Bank*, 137 S. Ct. 1589 (2017); *Gowdy v. Mitchell* (*In re Ocean Warrior, Inc.*), 835 F.3d 1310, 1318 (11th Cir. 2016) (citing *Williams v. EMC Mortg. Corp.* (*In re Williams*), 216 F.3d 1295, 1298 (11th Cir. 2000); *In re Sobczak-Slomczewski*, 826 F.3d 429, 432 (7th Cir. 2016), *cert. denied sub nom. Sobczak-Slomczewski v. WDH, LLC*, 137 S. Ct. 1119 (2017); *Hamid v. Deutsche Bank Nat'l Trust Co.* (*In re Hamid*), 577 Fed. App'x. 208, 208 (4th Cir. 2014) (per curiam); *In re Caterbone*, 640 F.3d, 108, 111–12 (3d Cir. 2011); *Emann v. Latture* (*In re Latture*), 605 F.3d 830, 837 (10th Cir. 2010); *Statek Corp. v. Dev. Specialists, Inc.* (*In re Coudert Bros. LLP*), 673 F.3d 180, 185–86 (2d Cir. 2012); *Vázquez Laboy v. Doral Mortg. Corp.* (*In re Vázquez Laboy*), 647 F.3d 367, 371 (1st Cir. 2011).

[8] 559 U.S. 154, 174, 130 S. Ct. 1237, 1251 (2010) (Ginsburg, J, concurring, joined by Stevens and Breyer, JJ.) (citations omitted).

*Hamer* changes little in how the Supreme Court analyzes limitations on the courts' jurisdiction. *Hamer's* facts are quite similar to those of *Bowles v. Russell.*[9] In both cases, a district court extended the time for a petitioner to file a notice of appeal beyond the time the rule allowed for such extensions.[10] In both cases, the petitioner filed within the time given by the extension, but beyond the time allowed by the rule. The Court applied the same test in both cases and found that the time restriction in *Bowles* was mandated by 28 U.S.C. § 2107(c), which addresses the time for an appeal to the court of appeals, and therefore was jurisdictional. However, in *Hamer*, the relevant time limitation was not to be found in statutory law, and so was not jurisdictional.

Despite the similarities between these two decisions, the Court found it necessary to return to this question because "[s]everal Courts of Appeals, including the Court of Appeals in Hamer's case, have tripped over our statement in *Bowles* that 'the taking of an appeal within the prescribed time is mandatory and jurisdictional.'"[11] The Court explained:

> The rule of decision our precedent shapes is both clear and easy to apply: If a time prescription governing the transfer of adjudicatory authority from one Article III court to another appears in a statute, the limitation is jurisdictional; otherwise, the time specification fits within the claim-processing category.[12]

The Court further explained that "[i]n cases not involving the timebound transfer of adjudicatory authority from one Article III court to another, we have additionally applied a clear-statement rule," which requires courts to treat statutory filing requirements as non-jurisdictional unless Congress makes a clear statement that it intends for the requirements to carry jurisdictional consequences.[13] Because the *Hamer* Court did not need to apply the clear statement rule, its reference to it assures us of its continued applicability.

---

[9]551 U.S. 205, 210–13, 127 S. Ct. 2360, 2364–65 (2007).

[10]Federal Rule of Civil Procedure 4(a)(6) was at issue in *Bowles* and Rule 4(a)(5)(C) in *Hamer*.

[11]*Hamer*, 138 S. Ct. at 21 (footnote omitted) (citation omitted).

[12]*Id.* at 20 (citations omitted).

[13]*Id.* at 20 n.9.

And so, with the benefit of the judicial gloss provided by *Hamer*, the Panel will determine its jurisdiction over this late-filed appeal by making two inquiries into the nature of the time limit set by 28 U.S.C. § 158(c)(2). First, is the time limit statutory in nature? And second, because § 158(c)(2) governs the transfer of adjudicatory authority from an Article I court (the bankruptcy court) to either an Article III (district court) or another Article I court (bankruptcy appellate panel), we must determine whether Congress made a clear statement that it intended that time limit to carry jurisdictional consequences.

## I. The Deadline Imposed by 28 U.S.C. § 158(c)(2) Is Set by Statute

The Court's current line of inquiry into the jurisdiction of federal courts began with *Kontrick v. Ryan*, when it held that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction."[14] Because the rules of procedure are prescribed by the Court "'it is axiomatic' that such rules 'do not create or withdraw federal jurisdiction.'"[15] Typically, the question of whether a filing requirement is established by a statute or rule is an easy one, but this case is not typical. Section 158(c)(2) presents a rare sort of statute that specifically references a rule, requiring that appeals "shall be taken . . . in the time provided by Rule 8002 of the Bankruptcy Rules." Thus, the Panel faces a chicken or egg type quandary, and must determine which comes first, the rule or the statute.

*Kontrick* held that the time limit to object to a discharge in bankruptcy was not jurisdictional in nature because 28 U.S.C. § 157(b)(2)(J), which grants the bankruptcy court jurisdiction to adjudicate objections to discharge, "contains no timeliness condition," but rather "[t]he time constraints applicable to objections to discharge are contained in Bankruptcy Rules prescribed by this Court . . . ."[16] Because § 157 does not use time as a qualification on bankruptcy courts' jurisdiction, the Supreme Court is free to fill this void and prescribe its own, non-jurisdictional, time limitations. But the unusual nature of § 158(c)(2) leaves no such void. On the contrary, § 158(c)(2) affirmatively sets a time limitation on the ability of district courts

---

[14]540 U.S. 443, 452, 124 S. Ct. 906, 914 (2004) (citing U.S. Const., Art. III, § 1).

[15]*Id.* (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S. Ct. 2396, 2400 (1978)).

[16]*Kontrick*, 540 U.S. at 453.

and the bankruptcy appellate panels to hear appeals of bankruptcy proceedings. Though Congress explicitly delegated the authority to determine the temporal contours of this time limit, the limit itself is a statutory requirement set by Congress.

Every circuit court that has considered this question has come to the conclusion that the time limit for appeals from bankruptcy court decisions is statutory. The Seventh Circuit Court of Appeals has recently written persuasively on this subject:

> [w]hile the specific time period is found in a bankruptcy rule, the statutory grant of jurisdiction in 28 U.S.C. § 158 limits appeals to those made in the time limits prescribed in Rule 8002(a). Rule 8002(a)'s time limit therefore is more analogous to the one found in Fed. R. App. P. 4(a)(6) and 28 U.S.C. § 2107 than the time limits found solely in Bankruptcy Rules 4004 and 9006(b)(3). Accordingly, the failure to file a timely notice of appeal strips the district court of jurisdiction to hear the appeal.[17]

And in an older decision, the Tenth Circuit Court of Appeals also wrote persuasively regarding § 158(c)(2) time requirement's statutory nature:

> [i]t is true that bankruptcy rules *alone* cannot create or withdraw jurisdiction. Here, however, it is Section 158(c)(2) that is determining jurisdiction by incorporating the time limits prescribed in Rule 8002(a). Indeed, the Court in *Bowles* went so far as to say that "Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits." Authorizing courts to make exceptions to jurisdictional time limits is effectively the same as authorizing courts to set the time limit in the first instance.[18]

Thus, the Panel is satisfied that the 14 day filing deadline at issue is not merely a self-imposed deadline, but rather a statutory requirement imposed on the courts by Congress. This does not end our analysis, however. Now we must determine whether Congress intended for this time limit to be a limit on our jurisdiction to hear appeals.

---

[17] *Sobczak-Slomczewski*, 826 F.3d at 432.

[18] *Latture*, 605 F.3d at 837 (citing *Bowles*, 551 U.S. at 214) (emphasis in original).

**II.     Section 158(c)(2) Contains a Clear Statement of Congressional Intent that the Time Limit it Incorporates Carries Jurisdictional Import**

Supreme Court precedent splits statutory filing requirements into two broad groups: those defining the courts' jurisdiction and claims-processing rules. The Court characterizes claims-processing rules as procedural hurdles that merely "seek to promote the orderly progress of litigation" but which do not limit jurisdiction.[19] Of course, Congress may attach jurisdictional significance to what would ordinarily be considered a claims-processing rule, but the Court will not do so without a "clear statement" that Congress intended to do so.

Simply stated: "[a] rule is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional'";[20] however, Congress need not "incant magic words in order to speak clearly."[21] Absent such incantation, the Court has weighed a number of factors to determine if Congress has made a clear statement that it intended the limitation to be jurisdictional in nature. First, the Court has asked whether the language of the limitation "speak[s] in jurisdictional terms."[22] Second, the Court has looked to the statute's "context, including [the] Court's interpretation of similar provisions in many years past."[23] Third, the Court has looked to whether finding a filing limitation to be jurisdictional would further the policy goals of the underlying statutory scheme.[24] Thus, while the Court intended the clear statement rule to be a "readily administrable bright line,"[25] in practice the clear statement rule is more of a standard than a rule, and more simply stated than applied.

---

[19]*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435, 131 S. Ct. 1197, 1203 (2011).

[20]*Hamer*, 138 S. Ct. at 20 n.9 (citations omitted).

[21]*Id.* (quoting *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 153, 133 S. Ct. 817, 824 (2013)).

[22]*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S. Ct. 1127, 1133 (1982).

[23]*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168, 130 S. Ct. 1237, 1248 (2010).

[24]*Henderson*, 562 U.S. at 440.

[25]*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516, 126 S. Ct. 1235, 1245 (2006).

The Court has repeatedly noted "that most [statutory] time bars are non-jurisdictional" as they are "quintessential claim-processing rules."[26]  Even so, applying the clear statement rule, the Panel is satisfied that § 158(c)(2) numbers among that rare breed of jurisdictional, statutory time-bars.

## A.       The Language of § 158(c)(2) Suggests Congress' Clear Intent

The language employed by § 158(c)(2) is the first clear statement of its jurisdictional nature.  In *Kwai Fun Wong*, the Supreme Court determined that the time restriction on filing tort claims against the United States provided by 28 U.S.C. § 2401(b) was not jurisdictional.  Section 2401(b) provides that, "[a] tort claim against the United States shall be forever barred unless it is presented . . . [to the agency] within two years . . . or unless action is begun within six months . . . ."[27]  In finding this time restriction to be non-jurisdictional, the Court reasoned that, in general:

> filing deadlines . . . do not deprive a court of authority to hear a case . . . . even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are); indeed, that is so "however emphatic[ally]" expressed those terms may be . . . Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional . . . .
>
> * * * *
>
> § 2401(b)'s text speaks only to a claim's timeliness, not to a court's power. . . . [It] "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts."  It does not define a federal court's jurisdiction over tort claims generally, address its authority to hear untimely suits, or in any way cabin its usual equitable powers. [28]

Contrasted with the statute involved in *Kwai Fun Wong*, § 158(c)(2) provides that, "[a]n appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules."  Based only on the rule of *Kwai Fun Wong*, it

---

[26]*United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) (citations omitted).

[27]28 U.S.C. § 2401(b).

[28]135 S. Ct. at 1632–33 (citations omitted).

would appear that § 158(c)(2) "speaks only to a claim's timeliness, not to a court's power."[29] However, the Supreme Court has suggested that language similar to that in § 158(c)(2) to be jurisdictional in nature. In *Henderson*, the Court found that 38 U.S.C. § 7266(a) did not speak jurisdictionally,[30] but explained that: "[i]f Congress had wanted [§ 7266(a)'s time limit] to be treated as jurisdictional, it could have cast that provision in language like that in [38 U.S.C. § 7292(a)] that governs Federal Circuit review of decisions of the Veterans Court."[31] Notably, the exemplary jurisdictional language cited by the Court closely parallels that of § 158(c)(2). *Compare* 38 U.S.C. § 7292(a) ("within the time and in the manner prescribed for appeal to United States courts of appeals from United States district courts") *with* 28 U.S.C. § 158(c)(2) ("in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.").

*Henderson* found the language of 38 U.S.C. § 7292(a) to be a persuasive indication of Congress' jurisdictional intent based on the Court's reasoning in *Bowles*. In *Henderson*, the unanimous Court reasoned that: "the time for taking an appeal from a district court to a court of appeals in a *civil* case has long been understood to be jurisdictional, this language clearly signals an intent to impose the same restrictions on appeals from the Veterans Court to the Federal Circuit."[32] This reasoning provides even stronger support for § 158(c)(2)'s jurisdictional nature, since unlike 38 U.S.C. § 7292(a), it specifically refers to civil litigation.

**B.      The Statutory Context of § 158(c)(2) Does Not Preclude a Finding that the Time Limitation is Jurisdictional**

The context of § 158(c)(2) does not preclude finding it to be jurisdictional. The *Henderson* Court noted that 38 U.S.C. § 7266 was located in a subchapter of the enacting legislation entitled "Procedure."[33] Moreover, 38 U.S.C. § 7266 only described the procedure for filing an appeal to the Veterans' Court, while a separate subchapter entitled "Jurisdiction; finality

---

[29] *Id.* at 1628 (citation omitted).

[30] 562 U.S. at 438.

[31] *Id.*

[32] *Id.* at 438–39 (citing *Bowles*, 551 U.S. at 209–10) (emphasis added).

[33] *Id.* at 439 (citing Veterans' Judicial Review Act of 1988, § 301, 102 Stat. 4113, 4115–16).

of decisions," established the jurisdiction of the Veterans Court.**34** In contrast, § 158 grants district courts jurisdiction to hear bankruptcy appeals and allows the delegation of that authority to bankruptcy appellate panels.

However, the importance of context in connoting a limitation of jurisdiction is sharply curtailed by the Supreme Court's decisions in *Gonzalez* and *Auburn Regional*. In those cases, the Court gave different jurisdictional treatment to paragraphs sharing a single subsection when it found that one paragraph spoke jurisdictionally, and the other did not.**35** Thus, this consideration would likely find § 158(c)(2) neutral.

## C.      Policy Considerations Support a Finding that the Time Limit is Jurisdictional

In *Henderson*, the Court found the policy concerns to be the "most telling" indication of Congress' intent.

> [W]hat is most telling here are the singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims. "The solicitude of Congress for veterans is of long standing." And that solicitude is plainly reflected in the VJRA, as well as in subsequent laws that "place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions[.]"**36**

There is no corresponding policy concern in bankruptcy appeals because they lack the singular nature of veteran benefits claims appeals. Bankruptcy appeals are brought by debtors, creditors, trustees, and government agencies, none of which is disproportionally affected by a holding that § 158(c)(2)'s time bar is jurisdictional.

Moreover, the primary policies behind the Bankruptcy Code—to give the "honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by

---

**34** *Id.* (citing 102 Stat. 4113–14).

**35** *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 155 (2013) (finding 42 U.S.C. § 1395oo(a)(1) to be jurisdictional and (a)(3) to be non-jurisdictional) and *Gonzalez v. Thaler*, 565 U.S. 134, 143, 132 S. Ct. 641 (2012) (finding 28 U.S.C. § 2253(c)(1) to be jurisdictional and (c)(3) to be non-jurisdictional).

**36** 562 U.S. at 439 (citations omitted).

the pressure and discouragement of pre-existing debt"[37] and "a prompt and effectual administration and settlement of the estate . . . within a limited period"[38]—are furthered by strict appeals deadlines which promote finality of decisions. "This rigid enforcement is justified by the 'peculiar demands of a bankruptcy proceeding,' primarily the need for expedient administration of the Bankruptcy estate aided by certain finality of orders issued by the Court in the course of administration."[39] Further, all interest holders in a bankruptcy are subject to the twin pressures of the time-value of money and the depreciation of assets, and are benefitted by the quick appeals deadlines and the ability to make future financial decisions based on the finality of court determinations.

### III.    Conclusion: § 158(c)(2)'s Appeal Deadline Is Jurisdictional in Nature

Since the time of the Bankruptcy Act, the Sixth Circuit Court of Appeals has consistently held that Bankruptcy Rule 8002's time limit for appeals is jurisdictional. Of course, these decisions are from the time when the Court was "'less than meticulous' in using the term 'jurisdictional.'"[40] However, as noted earlier, all ten circuit courts that have considered this question since *Kontrick* have uniformly found § 158(c)(2) to be jurisdictional.

Likewise, by following the Supreme Court's rule of decision in this area, especially in light of *Henderson's* approval of similar statutory language as jurisdictional,[41] § 158(c)(2)'s relationship to § 2107 with its long history of being held jurisdictional, and the need for finality in bankruptcy court decisions, we also find § 158(c)(2)'s time limits to be jurisdictional.

### CONCLUSION

For the foregoing reasons, this appeal is **DISMISSED** for lack of jurisdiction.

---

[37] *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699 (1934) (citations omitted).

[38] *Katchen v. Landy*, 382 U.S. 323, 328, 86 S. Ct. 467, 472 (1966).

[39] *Anderson v. Mouradick* (*In re Mouradick*), 13 F.3d 326, 327 (9th Cir. 1994) (citations omitted).

[40] *Hamer*, 138 S. Ct. at 21 (quoting *Kontrick*, 540 U.S. at 454).

[41] 562 U.S. at 438.